[No. A072986. First Dist., Div. Four. June 17, 1996.]

BAY AREA RAPID TRANSIT DISTRICT, Petitioner, v.
THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent;
CAROLYN ETIER, Real Party in Interest.

COUNSEL

Wilson, Elser, Moskowitz, Edelman & Dicker, Ralph W. Robinson and Ronald F. Berestka, Jr., for Petitioner.

No appearance for Respondent.

Perry S. Dobson for Real Party in Interest.

OPINION

**ANDERSON, P. J.**—Bay Area Rapid Transit District (hereafter BART) seeks a writ to require respondent court to grant its motion for summary judgment. As explained below, we agree that BART is entitled to summary judgment and grant the requested relief.

FACTS AND PROCEDURAL HISTORY

Carolyn Etier (hereafter plaintiff) filed a complaint against BART alleging that on February 18, 1993, plaintiff boarded a BART train at the Oakland MacArthur Station, heading south. As she was standing in the train, preparing to take her seat, the train jerked back and forth approximately five times. The jerks caused plaintiff to be thrown into a seat, injuring her leg. In a first cause of action, plaintiff alleged that the cause of the incident was the negligence of the train operator in not allowing plaintiff sufficient time to take her seat. In a second cause of action, plaintiff alleged that the jerking of the train was caused by "negligent maintenance of the train and negligent supervision of train operators."

In its answer BART alleged as an affirmative defense design immunity pursuant to Government Code section 830.6. BART moved for summary judgment or, in the alternative, for summary adjudication on the ground of this immunity. In support of its motion, BART offered evidence that "Train

operators can close BART train doors before the 'dwell' time expires; however, the train is incapable of accelerating or departing the station until it gets a release to depart from the computer after the dwell time has expired."

BART also introduced evidence of the design of the acceleration system of BART trains through a declaration of Joseph P. Van Overveen, employed by BART as a senior mechanical engineer. Mr. Overveen stated in relevant part as follows: "9. All BART cars are equipped with Slip Spin Protection ('SSP'). SSP is a device which disconnects the power to the train car wheels if the device senses that the wheels are slipping and beginning to spin during acceleration. Power is then reapplied to continue the train's acceleration. This disconnection and reapplication of power is repeated each time the wheels begin to spin until the wheels are able to maintain traction thereby permitting the train to continue accelerating. [¶] 10. The proper function of SSP when wheels begin to spin may cause one or several lurching motions during acceleration as the SSP is functioning. [¶] 11. The design of the SSP device was approved by the independent consulting firms of engineers, Parsons-Brinkerhoff, Tudor, and Bechtel and the BART Board, as a component on all BART trains prior to implementation of the device on trains in the BART system."

Evidence was further presented that there are two automatic acceleration rates for BART trains—the standard acceleration rate and a reduced rate used to prevent wheel slippage when the tracks become wet due to inclement weather. On the day plaintiff was injured, the BART train on which she was riding was set for the lower acceleration rate.

In opposition to the motion for summary judgment, plaintiff offered the declaration of her expert, J. Peter Cunliffe. Mr. Cunliffe stated that he had reviewed the deposition transcripts. He had also reviewed the BART maintenance records of the car in which plaintiff was injured, as well as BART vehicle preventive maintenance procedures. He was familiar with BART operating procedures, had inspected BART cars and had ridden BART trains. Based on these "facts," Mr. Cunliffe stated "that the jerking of the train backward and forward several times (which was the cause of Plaintiff's accident) is improper for a passenger-carrying transit system and unacceptable and inconvenient for its patrons." He stated that all features of BART's automatic train operation, including the slip-spin device, must function in unison to provide a smooth, safe, and acceptable ride for passengers. "If there is any malfunction, or fault, in any of these items, or systems, a degradation of service can occur. Such malfunction, or fault, can be caused

by negligent maintenance, or negligent supervision of operations, involving one or more elements of the system." Therefore, opined Mr. Cunliffe, "the Plaintiff's accident was caused by a fault, or failure, of one or more of the elements of the system, thereby making the jerks take place. However, because so many elements are involved, it is not possible to identify which item, or items, were the specific causation. It is possible to say, however, that the fault, or failure, is the result of either negligent maintenance or negligent supervision of operations."

In reply to the opposition, BART set forth the additional undisputed fact that car No. 766, the car on which plaintiff had been injured, had scheduled preventative maintenance six days before the accident and that the only records reviewed and relied upon by plaintiff concerning the maintenance of cars on the subject train was for car No. 766.

Respondent court filed its order, granting summary adjudication of the first cause of action and denying as to the second cause of action. As to the second cause of action, respondent court explained: "Design immunity is limited to a 'design-caused accident' and 'does not immunize [the public entity] from liability caused by negligence independent of design.' " (See *Flournoy* v. *State of California* (1969) 275 Cal.App.2d 806, 811 [80 Cal.Rptr. 485].)

"If the 'jerking and lurching' of the train was not due to any inherent deficiencies built into the system, but could have been avoided through the exercise of ordinary care in its maintenance and operation, different considerations become relevant. Only where causation of injury by plan or design is indisputable may a judge sustain a defense of statutory immunity for design-caused injuries by means of a motion for summary judgment. See, *Flournoy v. State of California, supra*, [275 Cal.App.2d] at p. 813. [¶] Here, plaintiff's amended complaint alleges negligent maintenance. Although B.A.R.T. presented evidence that scheduled preventative maintenance and repairs were performed on car number 766, B.A.R.T. failed to present evidence that the same maintenance was performed on the *entire* train (train number 225) [citation]. Further, B.A.R.T. failed to show whether the assigned performance level remained unchanged at all relevant times. The Court notes that plaintiff's evidence may be insufficient to establish negligent maintenance. However, the Court is precluded from reaching this issue because defendant failed to meet its initial burden."

## Discussion

"Recent amendments to the summary judgment statute have changed the burden of proof. A defendant moving for summary judgment

meets his burden of proof of showing that a cause of action has no merit if that party shows that . . . there is a complete defense to the action. (Code Civ. Proc., § 437c, subd. (o)(2).) Once the defendant does so, the burden shifts back to the plaintiff to show that a triable issue of one or more material facts exists . . . as to that . . . defense. In doing so, the plaintiff cannot rely on the mere allegations or denial of his pleadings, 'but, instead, shall set forth the specific facts showing that a triable issue of material fact exists. . . .' [Citations.]" (*Barber* v. *Marina Sailing, Inc.* (1995) 36 Cal.App.4th 558, 562 [42 Cal.Rptr.2d 697].)

"A public entity establishes design immunity as a defense by showing three elements: (1) the causal relationship between the design and the accident; (2) the discretionary approval of the design prior to construction; and (3) substantial evidence supporting the reasonableness of the design. [Citation.]" (*Compton* v. *City of Santee* (1993) 12 Cal.App.4th 591, 596 [15 Cal.Rptr.2d 660].) In evaluating a motion for summary judgment on this issue, as on others, the affidavits of the moving party are strictly construed and those of the opposing party are liberally construed. However, when the motion for summary judgment is supported by affidavits or declarations sufficient to sustain the motion, the burden shifts to the party opposing the motion to show that triable issues of fact exist. (*Id.* at p. 595.)

Respondent court cited the *Flournoy* case in explaining that the causal relationship between accident and design had not been established. In *Flournoy* a fatal accident occurred due to ice on a bridge. To establish design immunity, the state offered the opinion of an expert that the design of the bridge conformed to good engineering practice and was of a well known and commonly used design. Inherent in the design of that type of bridge was a tendency to frost or ice due to high humidity and freezing temperatures. (*Flournoy* v. *State of California*, *supra*, 275 Cal.App.2d at p. 810.) The defect in the state's showing was its failure to show "a design-caused accident. Ice on the roadbed was not an element or feature of the plan or design of Clear Creek Bridge. Section 830.6 protects the public from liability for reasonably conceived design choices made in the exercise of discretionary authority." (*Id.* at p. 812.)

In contrast to *Flournoy*, BART showed a design-caused accident. Plaintiff stated she fell because of lurching of the car upon acceleration. BART introduced evidence that design of its acceleration system produces some lurching motion during acceleration when the system senses that the wheels are slipping. It also introduced evidence that the automatic acceleration was set at a reduced rate in wet weather to reduce the possibility of lurching and

was so set on the day of the accident. From this evidence it can reasonably be inferred that the lurching that plaintiff alleged occurred during acceleration at the MacArthur Street station in Oakland resulted from the design of the acceleration system.

The burden then shifted to plaintiff to show that something other than the slip pin protection produced the lurching that caused the accident in question. The only declaration offered by plaintiff in opposing the motion for summary judgment was that of Mr. Cunliffe, who was of the opinion that the lurching was caused "by a fault, or failure, of one or more of the elements of the system." Even construing Mr. Cunliffe's declaration liberally, we conclude that it does not raise a triable issue of fact.

"The value of opinion evidence rests not in the conclusion reached but in the factors considered and the reasoning employed." (*Pacific Gas & Electric Co.* v. *Zuckerman* (1987) 189 Cal.App.3d 1113, 1135 [234 Cal.Rptr. 630].) Mr. Cunliffe does not directly take issue with the contention that lurching upon acceleration is a product of the design of the acceleration system. He is of the view that a smooth, safe and acceptable ride is only produced by the proper functioning in unison of all systems. He states that a malfunction of any system can be caused by negligent maintenance or negligent supervision of operations. However, he does not refer to any evidence that, in fact, maintenance or supervision of operations was negligent nor does he explain the mechanism by which a failure in regard to these functions could cause lurching during acceleration.

Let a peremptory writ of mandate issue directing respondent court to vacate its order denying the motion for summary judgment and to enter a new order granting the motion.

Poché, J., and Hanlon, J., concurred.